The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Orestal Soto-Peguero, Appeal No. 18-1897. Good morning, Counselor. Or good afternoon, I should say. Good afternoon, Your Honors. As I said, my name is Jane Lee and I represent Mr. Soto-Peguero. Your Honors, this case is about the limits of the independent source exception to the exclusionary rule. This Court should not apply the independent source exception in this case because to do so would sully the protections of the Fourth Amendment. This Court should follow the Eighth Circuit in their ruling in Madrid and hold that the severity of the police misconduct in this case prevents the application of the independent source rule. In this case, two officers illegally searched the defendant's residence. The officers were in the residence legally to do a protective sweep. The officers searched the residence. The officers searched the residence. They went upstairs into the house, went into the bedroom, saw a vent with a closed top on it, removed the cover of the vent, looked in the vent, saw heroin, moved the heroin, saw the gun. Then they went into a second bedroom where they opened a drawer in the bottom of a nightstand, saw a plastic bag, opened the plastic bag, looked in the plastic bag, saw the heroin. And while doing that, they broke apart furniture and rummaged through things and broke furniture. And the defendant has photographic proof that they broke the furniture because there are photos of the bed with the headboard off and the sideboard off and the furniture on the floor. The defendant testified at the hearing that he heard someone ramming his front door and he thought he was being robbed. He fired a shot through the front door and then he tried to escape through the back. And when he realized it was a glass door at the back, he saw the police officers, he was not being robbed. He ran upstairs with the heroin and the gun and hid it in a vent. Now, he testifies that he practiced this because he thought the vent made a good hiding place. So he practiced it by getting a t-shirt, removing the vent cover, putting a t-shirt in the vent because the vent went from the bedroom all the way down to the living room. Put a t-shirt in so that the heroin and the gun would not drop down to the living room. Snapped the vent cover back in place and he describes how it actually, you can hear it click back into place. And then he went and hid in a closet with the other defendant in this case. If we excise the gun and drugs from the warrant application, there still would have been probable cause to search the residence. No, Your Honor, assuming without conceding that there's probable cause to search the residence. If you excise the gun and the drugs, in this case, we should still not apply the independent search, independent source exception. Because the police officer's behavior in this case, the severity of their misconduct, we have to not apply the independent source because it sullies the protections of the Fourth Amendment. And I think, you know, this court has said, yes, probable cause. That's all we, oh, I can't see one of the judges. Okay. Excuse me. The district court seemed to rely on the inevitable discovery doctrine, not the independent source doctrine. Am I right about that? You are right about that, Your Honor. But I think it was the independent source doctrine. Because the inevitable discovery doctrine is if it wasn't, it would have been discovered. Depends on what happened in the warrant application. That's just dependent on whether the facts at the time of the freezing and before any of what you allege to be the illegal conduct of the sweep would have given probable cause for obtaining a warrant for a search. So all we have to consider, as I understand it, the district court doesn't care about what happened in the application for the warrant. Because if you just look at the facts as they existed at the time of the freezing of the house, was there probable cause then to obtain a warrant if it had been sought? If so, then inevitably it would have been discovered. Is that right? Well, I think both, you know, I don't think, I think it's a tempest in a teapot. It doesn't matter. The independent source, the inevitable discovery there. It matters because one of the things in your briefing that you identified as contributing to the egregiousness of the law enforcement misconduct is the supposed lying in the affidavit for the warrant. But that's irrelevant if the inevitable discovery doctrine is relied on because we never get to the question of behavior as to the actual warrant application. We would just look at was there sufficient evidence to support getting a warrant inevitably if it had been sought at the time of the freezing of the residence? Well, Your Honor, you know more than I do, but I think, I think that's not correct that the independent source doctrine applies. Different doctrines. Right. If either one applies, then there's no Fourth Amendment violation. In many cases, you don't have inevitable discovery. You have to rely on independent source. The district court here found that you don't need independent source because you have inevitable discovery based on the evidence that was available to the officers at the time they froze the apartment. Right. Right. All right. If that's right, then the only basis for the egregiousness of the misconduct has to be conduct that occurred during the sweep itself, not in the warrant application. And if we look at just what you allege occurred during the sweep itself to the district court, was there a claim made about the breaking of the furniture? Oh, yes. There was a, there was a claim made about the breaking of the furniture. The defendant testified at the suppression hearing and said. In your brief to the district court when you sought to rebut the inevitable discovery doctrine by claiming that there was a sully of the sullying of the prophylaxis, was there an argument made to the district court then about the breaking of the furniture as the basis for concluding that the inevitable discovery doctrine did not apply? Your Honor, I don't know. I wasn't counsel below and I can't recall that. Five minutes remaining. Because it's not that we're on plain air as to that question, aren't we? Well, no, I don't think so, Your Honor. I don't, I don't agree. I think that when you are, if you're going, if you're applying Madrid, you are looking at this. And Madrid was, Madrid was an inevitable discovery case. Was Madrid cited to the district court? Madrid, Madrid cited to the district court. Yes. They talked about how the court found, the district court found that the defendant, that the police officers went upstairs and downstairs on two occasions, detained and searched the occupants, seized the wallets, placed them in envelopes, marked the evidence, leaked. So it's for filing to, in this filing of the motion to suppress your, the papers were filed to the district court seeking to reject inevitable discovery based on Madrid? The Madrid was mentioned in the papers in the district court. Yes, Your Honor. Okay. It was. And I'm saying that you should apply Madrid now. And the, and the fact that they lied is part of, Madrid says severe police misconduct. And the fact that the police officers lied on the stand, that the court found the police officers lied on the stand. She said, I am unpersuaded by the officer's account of a block of heroin sticking out of the floor, bent in the front bedroom. That is a really important part of the misbehavior in this case, the severe misconduct in this case. They not only lied in the warrant, then they lie at the suppression hearing. Then the court finds they lied at the suppression hearing, but allows the evidence in because it does a Frank's exercise, the illegal evidence and find probable cause. And it allows the evidence in. And then they go on to lie at the trial. So what I'm saying is you have at this point, you have to stop it. You have to say the court has to say, I can't apply the independent source exception here or the inevitable discovery exception here. Because to do so means I am complicit in the officers lying. The court is complicit. Even on appeal, the government is still trying to argue that the police officers didn't lie on the stand. They say they won't have a reason to lie. You can't believe the defendant. But the court has found that the officers lied on the stand. So this is the essential part. No, it's two parts. The search is bad in and of itself. They break the furniture. But even if they don't break the furniture, they lift up the cover of the vent, which is in the floor. They unclick it. They open a drawer. They open a bag in a drawer. That's an illegal search. The court finds it's an illegal search without finding all of these details. But not only is it that an illegal search, but then they put it in the warrant. They say it was discovered in plain view, which even by their own admissions at the suppression hearing is not discovered in plain view. But that's what they put in the warrant. The court grants the warrant. Then they testify at the suppression hearing. And then they go ahead and testify again at trial this way. This would be like a sort of super exclusionary rule where officers, I take it bad faith wouldn't be enough. You'd have to have we have some. In a lot of the exclusionary rule cases, in a lot of Frank's cases, the officer's behavior is not impeccable. No, no, it's pretty bad. It's not the first case we've seen officers making up a story. No. And so in none of those cases are the exclusionary rule put on steroids like you would have us do here and say, even if. This could have been properly obtained and would have been properly obtained. It's going to be excluded from evidence. That's what you want us to say. And I have trouble as to where we draw the line. OK, those cases, your honor is correct. And the government cites four cases where there was egregious police misconduct and they still did a Frank's and just took it out of the end of the warrant application and decided if there was probable cause. But in none of those cases did the defendant raise the issue I'm raising right now, which is they never claimed that this solely the protections of the Fourth Amendment. They never asked them to apply Madrid. In fact, the only case where people have asked to this circuit to apply Madrid and we don't even need to apply Madrid. We have our own Madrid. We say in Silvestri you can't sully the protections of the Fourth Amendment if it's so bad that you do that. We say that. But even in this court in Dent examined whether they would apply Madrid. But in Dent, they didn't put the illegally obtained evidence in the warrant at all. They searched. So in other words, in every case where the officers intentionally violate the Fourth Amendment. Would that be enough? Intentionally violate the Fourth Amendment? No, I. What do you draw the line? That's another way of putting the question. I think you draw the line at this case. And because of how bad the search was and because of the line. But explain what drawing the line at this case means. How bad is bad? How do we objectively say this is so bad that it crosses the line? I can assure you this is not the worst case we've seen. No, I know that. I think this is worse. But nobody raised this issue. Nobody asked the court to do this. And your honor says. We need some help. Where do we draw the line? How do we write a decision as to where the line ends? Well, your honor, in Madrid, all the court said was. The severity of police misconduct in this case prevents us from applying the independent source. I don't know that you have to say any more than that. But I do think it's really, really important that the police officers lied on the stand. That the court found they lied on the stand. Can you say that the district court found that they lied on the stand? Yeah. There was a credibility judgment that had to be made. And the district court concludes just that I'm unpersuaded. She doesn't say that they lied or that there was intentional lying or that they were perjurious or anything like that. She just says I'm unpersuaded. We're hearing all the evidence as to exactly what happened. Which is a favorable finding to you. But for the selling the prophylaxis, you need a finding. It sounds like of intentional misconduct on the part of the officers. She doesn't make that finding. We have cases of defendants and sentencing hearings where they're disbelieved. But we don't have a finding that they committed perjury. She doesn't just say, you know, I'm not going to find here. She doesn't. She says. She says she's unpersuaded. She doesn't say that there was any intentional misconduct on the part of the officers in the testimony they gave. Does she? She says she's unpersuaded by the officer's account. In this situation, that can't mean anything but I don't believe the officers. We have cases for defendants where a defendant's account is not believed by the sentencing judge. But we don't say, therefore, that the sentencing judge has done enough to find that he perjured himself. I don't think it's comparable, Your Honor. I mean, we sentence defendants all the time. We apply that to level enhancement all the time. Here, she has found. A finding by the judge by a preponderance that it was perjurious. Here, there's nothing like that by the district court. There's no way you can interpret that statement as anything. She didn't even. She didn't have to say it. And there's no way. Because her ruling didn't depend on it. But she puts it in there. And there's no way you can interpret that statement as anything but I don't believe the police officers. They aren't telling the truth. You can't interpret it any other way. She's not saying they misremembered. She's not saying it's ambivalent. They may not have seen correctly. They might have relied on somebody else who didn't. She's not saying any of that either. She's saying it's sticking out of the vent or it's not sticking out of the vent. And I don't think it was sticking out of the vent. And if it wasn't sticking out of the vent, you aren't telling the truth. I mean, it's really. One last set of questions on this is if the determination you want us to make depends on a finding that effectively they perjured themselves and that there was this quite overaggressive and sort of, you know, wrecking ball approach to the suite, what do we do with the fact that there is no fact finding on any of those points in the district court's opinion? And yet she found without having made those findings, which you say would be the necessary findings we'd have to make. It's not as if she found those things and then said it didn't sully it. She did not make those findings. And then she concluded that there was no sullying. How on this record are we going to be able to. You want us to find that she clearly erred on all those points that we should find on our own that there was perjurious on our own that they must have destroyed all this furniture. And therefore, her decision about sullying is wrong. I'm just not quite sure what how we're supposed to proceed given the findings we have. Well, your honor, you could send it back and say for a ruling on that and say if these all these facts that were testified to at the suppression hearing, all of these facts, send it back for a finding. These facts are all true. If you find this happened. If I if I go to your filings below, I'm going to find you having made those arguments to the district court that she needed to make those findings. I'm not unsure. I was not the attorney below, but they did definitely argue in their papers below that this sullies the protections of the Fourth Amendment, that the cops misbehavior sullies the protections of the Fourth Amendment. They did argue that below. I mean, once she made a ruling, did they say, can you, you know, can you give us a. I mean, she'd already ruled. They didn't say there's nothing in the record after she rules to say, you haven't given us the findings on this. Will you please give us a finding of facts? But I don't think they need to do that. They preserved it. They preserved it by finding multiple emotions by having a hearing by filing post hearing memorandums. So they preserve this issue. One last comment is that your honor said that what I'm asking for is an exclusionary rule on steroids. And I think exactly the opposite. We have chopped into the exclusionary rule. The exclusionary rule says that the Fourth Amendment drives the draws a firm line at the boundary of the home. But here we let the police officers, 16 of them without a warrant, break down the door, search, come into the house, swarm all over the house, search the house. We let them then put the illegal evidence in the search warrant application. I'm not asking for an exclusionary rule on steroids. I'm asking to not, don't make the exclusionary rule useless. And at this point, you've got so many violations here going on that you've allowed so much. So that's it. Thank you, counsel. Thank you. Dan. At this time, I'd ask Attorney Lee to mute her device and Attorney Heinrich, please unmute your audio and video and proceed with argument. May it please the court. I'm Ted Heinrich on behalf of the government. I'd like to quickly go to the point that counsel just made about whether the officers lied. And I'd like to strongly rebut the idea that the court found that the officers lied. What the court said was, with respect to the conflict between the testimony of the officers and the testimony of Mr. Soto-Peguero, the court said, quote, I am not persuaded by the officer's account that a block of heroin was sticking out of a floor vent in the front bedroom. The court then had parentheticals, which contrasted the officer's testimony and Soto-Peguero's testimony. Then the court said, and I quote, nor do I resolve the conflicting evidence as to whether a bag in the back bedroom containing heroin was in a drawer or next to the bed. And then the court again put parentheticals contrasting the testimony of one officer and Mr. Soto-Peguero. The use of the phrase in the second sentence, nor do I resolve, clearly referred to the not persuaded language that counsel is focusing on. And it clearly shows that the court did not make a finding as to whether or not the officers lied. And that, of course, makes sense because the whole structure of the paragraph is to indicate that the court didn't have to make that finding because it found that moving the vent, which the officer admitted to doing, and looking inside the bag, which the other officer admitted to doing, was beyond the scope of the protective sweep that was justified by the circumstances which are not contested here. So the court didn't find that the officers lied. Second… Can I ask, just before you move on from that, if I understood your opponent's argument, that's a problem that no finding was made. Because if there had been intentional lying, that might bear on whether it sullied the prophylaxis. Was the argument made below that the reason there was a sullying was because there was lying? No. So what the defendant said was there was a sullying of the prophylaxis of the Fourth Amendment. They said that they did not cite Madrid, but they did say, as close as they came to saying what your Honor is asking about, and this is in a post-suppression hearing brief. The district court asked for a briefing after all the testimony, and the defendant said the fact that at least one officer testified inconsistently about the scope of his search, denying and then admitting that he looked inside a black bag containing the second kilogram, further supports suppression. So it was not disputed that that officer had testified inconsistently on two occasions, but there was no request that the court make a finding that the officers lied. There was no contention that the officers lied, and frankly, it's simply not appropriate. The defense counsel's argument is simply wrong. Second, with respect to the egregiousness of the conduct, in their opening brief, the defendant said the officers destroyed the apartment. There was no evidence to support that, and in fact, there were pictures taken of every room in the apartment prior to the search, and there was no evidence to support that. And as far as breaking of furniture is concerned, the only evidence concerning breaking of furniture was that the vent was moved, and in the back bedroom, the bed that was on the floor came off its wooden frame. That's the only evidence that they, quote-unquote, destroyed or broke furniture. So that's not supported by the record either, and in fact, there was no egregious circumstances here, because the court found, I think properly so, that the protective sweep was justified. The protective sweep was in part necessary, because for whatever reason, the defendant had fired a shot at the officers before they breached the apartment. And the court did find that the officer manipulated a kilogram, as the officer agreed, that the officer manipulated a kilogram to reveal a firearm. I think that fairly reviewing that officer's testimony concerning his understanding of the purpose of a security sweep, he indicated that he was looking for the firearm. Now, that's not allowed under the purposes of the security sweep, which is to freeze the apartment and make sure that no one else is there, but it is understandable, given the circumstances, that having just been fired upon, the officer would want to find the gun. And with that understanding, it was not egregious behavior that either sullies the prophylaxis of the Fourth Amendment or is egregious behavior of the type that was found in Madrid that would justify overriding the exception that the parties have briefed here. Once they had secured the occupants and did a patent search of them, why wouldn't the remainder of the search go beyond the line? So the two defendants came down from the upstairs. The officers were on the first floor. Once they did finally come down, the officers did secure them, and then only two of the dozen or so officers who were present at the scene went upstairs to determine whether there were any other people present within the apartment. That was appropriate. That was justified. The district court doesn't suggest otherwise. What was inappropriate was to look inside a bag and manipulate objects in the vent in order to reveal those rumors. Was there anything raised to the district court about the wreckage created by the suite? In other words, in arguing to the district court that there was a selling of the prophylaxis, you already addressed the issue of whether there was an argument made to the district court about lying. Was anything argued to the district court about the destroying of property in the apartment? I don't believe that there was, Your Honor. I believe it was more in the—I mean, there were many additional arguments that were more beyond just the arguments that are raised here on appeal. And I think that they were primarily arguing that there weren't exigent circumstances in the first place, which is conceded here. But I don't think that they specifically— On this issue about independent source versus inevitable discovery, could you just help me understand how to think about this? The district court seems clearly to have decided as an inevitable discovery case. The briefing is then about independent source, which then makes the warrant application of some relevance. Am I right that it's not of any relevance if it's decided as an inevitable discovery case? I wish I could help, Your Honor. I mean, I have briefed this, and my belief is that the parties below and even the district court viewed them interchangeably as far as what the requirements were, what the court was asked to sort of decide. And I think the understanding was, well, where evidence has— The only independent source would have been the warrant. Yes. An inevitable discovery, you don't need a warrant. You just need evidence at the time of whatever the circumstance is to make the judgment that if you sought one, you could get one. That's at least how I thought it worked. Is that wrong? No, I think that that's right. I mean, I think that the parties here, and at least how I was approaching it, was, well, if the officers actually seized the items, it's got to be an independent source, which would be the warrant. If they never seized them or seen them, it would be inevitable discovery so that they would get them. I'm just not sure whether it makes any difference in terms of the court's analysis, because it seems to me that Madrid—again, it's not a First Circuit case, but it seems to me Madrid is on point as far as the circumstances here, and that whether or not the court thought it was applying inevitable discovery or— The only fact that I could see would be different for the analysis would be the conduct of the officers in the preparation of the affidavit for the warrant application. That's relevant to the independent source analysis, but it's not relevant to the inevitable discovery analysis. And I just don't think there's anything about how that was presented. I mean, I think that the affidavit presented that information briefly— Didn't it say it was in plain view? It did say it was in plain view. But not after the district court had ruled otherwise? Well, one of the officers indicated that he had misspoken. That was the inconsistent testimony that he alleged or that was discussed previously about looking inside the bag. I'm asking a different question. I'm sorry? When the warrant application identified those materials as having been found in plain view, was that right or wrong? That is correct, yes. At the time that affidavit was filed, hadn't the district court already ruled that she did not find that it was in plain view? I guess I'm misunderstanding the court about the time frame. The warrant was obtained the night of the search. Very night of the search. So at that time, there was no reason for him to think—that was his view as he testified also, in other words. Yes. Depression hearing. I got it. So the affidavit was called right out. He was relying on information from officers at the scene. The officer at the scene in question was Angela Miletus. That's time. Unless there are any other questions, the government will rest on its brief. Thank you, Your Honor. Let me ask one quick question. Let's assume there was outrageous behavior that went far beyond what we have here. What mechanism is there to deter or remedy that? Well, I do think that—I mean, there already is sufficient—there are mechanisms to deter police misconduct. I don't think it happened here. No, but my question is, assume they lied all over the place. Assume they broke every piece of furniture in the place and destroyed lots of stuff. And your question is? Would we have any role in deterring that? Well, I mean, that would be whether the court wants to adopt the same kind of standard as Madrid. I mean, I think that the court has already said, will it not—you don't apply the exception if it will sully the prophylaxis of the Fourth Amendment. I don't think that's the case here. I do think that that's a significant break on police misconduct in any of them. Just on that last point, how do you understand the difference between our sully the prophylaxis constraint on the exception and Madrid? Is there one? I don't know, Your Honor. I mean, I thought about it a little bit. Madrid didn't make a finding on whether there would have been probable cause. They simply skipped right to determining whether the behavior was so egregious. And I don't know that this court has ever said you can skip right to that. But I think that the court has said in the past, yeah, we're going to apply exceptions so long as they don't undermine the Fourth Amendment protections. And they won't here. Thank you, Counselor. Thank you, Your Honor. There was no rebuttal. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.